IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| MICHAEL K. POWERS, ET AL., | § | |
| | § | |
| v. | § | C.A. NO. V-11-051 |
| | § | |
| DIANA K. CLAY, ET AL. | § | |

**<u>OPINION AND ORDER DISMISSING CERTAIN CLAIMS AND RETAINING CASE</u>**

This case is a civil rights action originally filed by seven state prisoners pursuant to 42 U.S.C. § 1983.[1]

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, 10 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. A plaintiff's action is subject to screening regardless whether he prepays the entire filing fee, or proceeds as a pauper. <u>Ruiz v. United States</u>, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); <u>Martin v. Scott</u>, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam) (citations omitted). Plaintiff's <u>pro se</u> complaint must be read indulgently, see <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972) (per curiam), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible. <u>Denton v. Hernandez</u>, 504 U.S. 25, 32-33 (1992).

Applying these standards, plaintiffs' Eighth Amendment claims against Warden Clay and Major Castro as well as their deliberate indifference to serious medical needs claims against

---

[1] The seventh plaintiff, John Jason Everett, failed to respond to a notice of deficient pleading, failed to seek leave to proceed <u>in forma pauperis</u>, failed to provide a current address, and failed to respond to a show cause order. Therefore, on December 20, 2011, his claims were dismissed without prejudice for failure to prosecute. (D.E. 59).

Captain Saenz are retained. Plaintiffs' remaining claims against the remaining defendants are dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. Upon consent of the plaintiffs, (D.E. 23, 24), this case was referred to a magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 25); see also 28 U.S.C. § 636(c).

## II. FACTUAL ALLEGATIONS

Plaintiffs are inmates in the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"), and at the time of the events forming the basis of this lawsuit, they were confined at the Stevenson Unit in Cuero, Texas. On September 26, 2011, they filed this lawsuit alleging that, on April 6, 2010, defendants were deliberately indifferent to their health and safety when they forced the plaintiffs to sit in the sun for over five hours, without adequate water or restroom facilities, and later, denied them medical attention for the injuries they sustained that day. (D.E. 1). In addition, plaintiffs claim that defendants retaliated against them for vocalizing their complaints about the treatment that day. Id.

In support of the claims, five plaintiffs have filed affidavits concerning the events, (D.E. 6-10), and each plaintiff has filed a supplement to the original complaint offering evidence of exhaustion, as well as other details. (D.E. 11-17). They also sought class certification, (D.E. 2); however, that motion was denied. See generally Powers v. Clay, No. V-11-051, 2011 WL 6130929 (S.D. Tex. Dec. 8, 2011) (unpublished).

In the original complaint, plaintiffs identified the following Stevenson Unit officials and employees as defendants: (1) Warden Kenneth R. Bright; (2) Assistant Warden Diana K. Clay; (3) Major Evelyn Castro; (4) Captain Norman Saenz; (5) Captain Luis Hernandez; (6) Lieutenant Esmerejildo Moreno; (7) Officer Brian A. Smolik; (8) Officer Kristy Konchaba-Smolik; (9) Officer Mitzi F. Kiehn; (10) Officer Kenneth E. Wilson; (11) John Doe medical provider; and (12) Jane Doe medical provider. In addition, plaintiffs sued (13) Rick Thaler, the TDCJ-CID director, and two regional grievance investigators, (14) J.M. Garcia, and (15) Barbara Trevino.

Each of the six plaintiffs had a separate, individual Spears[2] hearing. The following allegations were made in plaintiffs' original complaint, (D.E. 1), affidavits, supplements to the complaint, or at their hearings:

On April 6, 2010, at approximately 9:00 a.m., correctional officers entered the J-3 building at the Stevenson Unit and ordered the prisoners to exit the building and take nothing with them except "shirt, pants, shoes and i.d.'s." Captain Hernandez was in charge of the evacuation of J-3, and it appeared to the plaintiffs that a drug search was being conducted on dorms G, H, and I using drug sniffing dogs. As the inmates exited the building, officers in D-space searched them and confiscated any materials except the allowed clothing. Plaintiffs believed that Captain Hernandez was in charge of the search of the dorms, and he remained in the J-3 building for most of the day.

After all the inmates had cleared the building, they were escorted to the recreation yard and ordered to sit on the concrete basketball court, back to back, with another inmate. After a

---

[2] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

short time had passed, certain inmates requested to use the restroom. The officers guarding them, including Lieutenant Moreno, Officer Smolik, and Officer Kiehn, told them that the water had been turned off to certain buildings, and indicated that inmates would have to use the single, outdoor latrine available. The water to this toilet was also not on, and shortly thereafter, it was overflowing with human waste. As the morning progressed, inmates requested water or permission to get up and stretch, but the defendant officers refused these requests.

At approximately 12:30 p.m., the inmates were taken to the dining hall where each inmate received one glass of water or tea with lunch. They were then escorted back outside, and again ordered to sit on the concrete court, back-to-back.

In the early afternoon, Warden Clay and Major Castro came to the yard. A few inmates asked Warden Clay for water. She ordered them to stay seated telling them that they would not receive any water. Some of the inmates began complaining loudly about the heat, lack of water, and lack of restroom facilities. In response, Warden Clay ordered Officer Wilson to guard the inmates with chemical agents. He obtained a chemical-dispersing gun and walked back and forth with the gun at a turn-out area outside of the fence. While guarding them, he did not say anything to the inmates.

Warden Clay and Major Castro continued to stand in the shade by the searchers' desk, drinking water and tea, and laughing at the inmates. Warden Clay would make rude comments to the inmates, but Major Castro remained silent.

At approximately 3:00 to 3:30 p.m., Lieutenant Hernandez came to the recreation yard and ordered I dorm to return to the building. About ten minutes later, he ordered H dorm to return, and fifteen minutes after that, he ordered the G dorm to return.

That evening, the inmates in J-3 Building were locked in their cells and not allowed to go to the day-room, or to take showers. Many of them requested to go to the infirmary, complaining of sun burn, blisters, headache, and other ailments they attributed to the sun exposure. Captain Saenz refused to let the inmates go to the infirmary that evening, but indicated that those wanting medical treatment would be seen the next morning.

The following morning, several nursing stations were set up within the unit to check prisoners complaining of injuries from the previous day. However, the nurses treated all the inmates the same, simply spraying a sunburn coolant on their skin. Some of the inmates, observing that the treatment was the same for all, called for a senior officer to take pictures of their injuries. Captain Saenz arrived and refused to take pictures, despite TDCJ Administrative Directive 3.47 that requires pictures be taken to document alleged injuries. Instead, he was verbally abusive toward those who made the request.

Numerous inmates, including plaintiffs, filed Step 1 grievances about the incident. Warden Bright responded to each grievance with the following reply:

> It is standard operating procedure during a building search to empty the cells during the search utilizing the recreation yard for offenders due to being a secure area. The west side of the unit (B-Building, J4, J5, J3, J2, J1 and gym) was without water due to a water leak; J-3 Building offenders were not being singled out. The entire Region was racked up on April 6th due to an escape at the Briscoe Unit. No further action warranted.

(D.E. 1 at 11). Certain plaintiffs filed Step 2 appeals. As to plaintiffs Powers, Hunter, Stricklin, and Porter, defendant J.M. Garcia offered the following, identical response:

> Your complaint has been noted and appropriately addressed at step one. Only issues related directly to you will be addressed in this response. There is no evidence you were deprived of water, you were released for chow where you received food and water/tea. At

5

> no time were you told you could not have water. Temperatures
> were in an acceptable range, 71 degrees to 79 degrees. Medical
> indicated redness to lower arms, face and neck. No further action
> warranted.

(D.E. 11, Ex. 1; D.E. 12, Ex. 1; D.E. 13, Ex. 1; and D.E. 15, Ex. 1).[3]

### III. DISCUSSION

Plaintiffs contend that defendants violated their Eighth Amendment right to be free from cruel and unusual punishment when they forced them to sit on the concrete slab for over five hours in the direct sun without adequate water or restroom facilities, and then denied plaintiffs medical attention for the injuries they sustained during the day. In addition, they allege that, because certain inmates complained about the treatment they received that day, defendants retaliated against them by denying showers and recreation to all inmates that evening, and ordering a lockdown of the J-3 building.

**A.    The Legal Standard For Screening Inmate Civil Rights Actions.**

Plaintiff's action may be dismissed for failure to state a claim upon which relief can be granted despite his failure to exhaust administrative remedies. 42 U.S.C. § 1997e(c)(2). It is well established that "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); see also Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995) (per curiam). An action may be dismissed for failure to state a claim when it is clear that

---

[3] Plaintiff Critchley's Step 2 appeal was dismissed with a finding that the "grievable time period had expired." (D.E. 14, Ex. 1). Plaintiff Keough did not submit copies of his grievances because they were confiscated during a shakedown. (D.E. 16, Ex. 1).

6

the prisoner can prove no set of facts in support of his claim entitling him to relief. Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted). The complaint must be liberally construed in favor of the prisoner, and the truth of all pleaded facts must be assumed. Id. (citation omitted).

**B.      Plaintiffs' Claims Against Defendants In Their Official Capacity Are Dismissed.**

Plaintiffs are suing defendants in both their individual and official capacities. (D.E. 1 at 1). They are seeking money damages as well as injunctive relief in the form of protective clothing, sun-screen, and modified procedures regarding sun exposure. Id. at 32-34.

The Eleventh Amendment bars claims against a state filed pursuant to § 1983. Aguilar v. Texas Dep't of Criminal Justice, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Servs., 925 F.2d 866, 875 n.9 (5th Cir. 1991)). "Section 1983 does not waive the state's sovereign immunity." Id. (citing Quern v. Jordan, 440 U.S. 332, 338 n.7 (1979)). "Texas has not consented to this suit." Id. (citing Emory v. Texas State Bd. of Med. Exam'rs, 748 F.2d 1023, 1025 (5th Cir. 1984)). A suit against a state official in his or her official capacity is a suit against the official's office, and consequently, "it is no different from a suit against the State itself." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (citations omitted).

Thus, to the extent plaintiffs are suing defendants in their official capacities for money damages, those claims are effectively claims against the State of Texas, and as such, are barred by the Eleventh Amendment. Accordingly, plaintiffs' claims for money damages against defendants in their official capacities are dismissed with prejudice as barred.

7

C.     **Plaintiffs' Claims Based On *Respondeat Superior* Are Dismissed.**

It is well established that "personal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) (1983) (citation omitted); see also Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976) (requiring affirmative link between injury and conduct of defendant). A plaintiff cannot obtain damages or injunctive relief from a policy-maker or supervisor solely on a theory of *respondeat superior*. See Monell v. Department of Social Servs., 436 U.S. 658, 691-95 (1978) (supervisory officials cannot be held vicariously liable under § 1983 for their subordinate's actions); Beattie v. Madison County Sch. Dist., 254 F.3d 595, 600 n.2 (5th Cir. 2001). Supervisory officials may be held liable only if they affirmatively participate in acts that cause the constitutional deprivation or if they implement unconstitutional policies that causally result in plaintiff's injury. Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir. 1987).

   1.     **Plaintiffs' claims against Rick Thaler are dismissed.**

Each plaintiff testified that Rick Thaler was named as a defendant because, in his position as director of the TDCJ-CID, he is "in charge" of each of the individual TDCJ prison units, including the Stevenson Unit, and is therefore ultimately responsible for the conditions at the Stevenson Unit, as well as the events that occur there. However, each plaintiff admitted that Mr. Thaler was not present at the Stevenson Unit on April 6, 2010, he did not engage in any conduct forcing plaintiffs to sit in the sun, and no plaintiff spoke to or contacted Mr. Thaler directly. Moreover, plaintiffs do not contend that Stevenson Unit officials were acting pursuant to any TDCJ-CID policy when they ordered the inmates to sit in the sun and denied them water and restroom facilities. Indeed, the majority of the plaintiffs testified that the situation was

attributable to Warden Clay and the other officers guarding them "felt sorry for them," and were only following orders to keep the offenders confined to the concrete slab. Ultimately, not one plaintiff alleged that Rick Thaler was personally involved in the alleged constitutional violations that occurred that day. Accordingly, plaintiffs fail to state a cognizable claim against Mr. Thaler, and plaintiffs' claims against this defendant are dismissed with prejudice.

    **2.    Plaintiffs' claims against Warden Bright as Warden are dismissed.**

Plaintiffs named Warden Bright as a defendant reasoning that, like Director Thaler, as the warden of the Stevenson Unit, he is responsible for what happens there and for the actions of his subordinates. However, § 1983 does not provide for liability on a theory of respondeat superior. Monell, 436 U.S. at 691-95. Plaintiffs admitted that Warden Bright was not personally involved in the April 6, 2010 incident, and in fact, many plaintiffs testified that he was not present at the Stevenson Unit that day. There is no evidence that Warden Bright was personally involved in the denial of plaintiffs' constitutional rights. Accordingly, Plaintiffs fail to establish that Warden Bright was personally involved in any cognizable constitutional violation, and their claims against this defendant are dismissed.

**D.    Plaintiffs' Claims For Failure To Properly Investigate Grievances Are Dismissed.**

Certain plaintiffs argue that Warden Bright violated their rights when he denied their Step 1 grievances, failed to investigate their claims adequately, and "lied" in his Step 1 response that J-3 offenders were racked-up and not allowed privileges on the evening of April 6, 2010 due to an escape at the Briscoe Unit. However, even if these allegations against Warden Bright are true, they fail to state a constitutional violation because prisoners have no constitutional right to have their grievances investigated or responded to favorably. See Geiger v. Jowers, 404 F.3d

9

371, 374 (5th Cir. 2005) (prisoners do not have a federally protected interest in having their grievances investigated or resolved in their favor); see also Beall v. Johnson, 54 F. App'x 796, 2002 WL 31845615, at *1 (5th Cir. Dec. 12, 2002) (per curiam) (unpublished) (prisoner's allegation that he has a constitutionally protected right to have his grievance investigated and resolved is without merit because resolution of the grievance does not involve a "significant hardship ... in relation to the ordinary incidents of prison life.") (citing Sandin v. Conner, 515 U.S. 472, 485-86 (1995)); Taylor v. Cockrell, 92 F. App'x 77, 78 (5th Cir. 2004) (per curiam) (unpublished) (Sandin, 515 U.S. at 485-86). Plaintiffs fail to establish that Warden Bright failed to properly investigate their grievances, and these claims are dismissed for fail to state a claim.

Similarly, plaintiffs named as defendants regional grievance investigators Barbara Trevino and J.M. Garcia on the grounds that they failed to investigate their complaints about the incident and denied their Step 2 grievances. Because these allegations also concern a failure to investigate grievances, they fail to establish a cognizable constitutional violation. Accordingly, plaintiffs' claims against defendants Trevino and Garcia for failure to properly investigate their grievances are dismissed for failure to state a claim.

E.  **Plaintiffs' Eighth Amendment Cruel And Unusual Punishment Claims Against Defendants Clay And Castro Are Retained.**

Plaintiffs contend that their Eighth Amendment right to be free from cruel and unusual punishment was violated on April 6, 2010, when they were forced to sit outside in the sun without adequate sun protection, water, and restroom facilities.

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. Prison officials must provide humane conditions of confinement; ensure that inmates receive adequate food, clothing, shelter, and medical care; and take reasonable measures to

guarantee the safety of the inmates. Farmer v. Brennan, 511 U.S. 825, 832 (1994). Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the eighth amendment. Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Hudson v. McMillian, 503 U.S. 1, 8-10 (1992). Such a violation occurs when a prison official is deliberately indifferent to an inmate's health or safety. Farmer, 511 U.S. at 834. Deliberate indifference is more than mere negligence. Id. at 835. To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. Id. at 837.

In accessing prisoner allegations of unconstitutional conditions of confinement, the Supreme Court has noted that some complained-of conditions amount to no more than "a de minimis level of imposition with which the Constitution is not concerned." Ingraham v. Wright, 430 U.S. 651, 674 (1977). Moreover, the Court has further explained that it is necessary to consider the duration of the plaintiff's exposure to the complained-of condition. See Hutto v. Finney, 437 U.S. 678, 686-87 (1978). Following this guidance, the circuit courts have uniformly held that certain conditions are not cruel and unusual if the inmate is subjected to the condition for only a short amount of time: "Conditions, such as a filthy cell, may 'be tolerable for a few days and intolerably cruel for weeks or months.'" Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989) (citing Hutto, 437 U.S. at 687); see also White v. Nix, 7 F.3d 120, 121 (8th Cir. 1993) (a prisoner confined to an allegedly unsanitary cell for eleven days could not prove an Eighth Amendment violation due to "relative brevity" of his stay) (citation omitted); Harris v. Fleming,

11

839 F.2d 1232, 1235-36 (7th Cir. 1988) (filthy, roach-infested cell for five days does not amount to constitutional violation). However, there is no exact time calculation, and with certain conditions, or combinations of conditions, the short duration of the exposure does not eliminate the violation. See, e.g., McBride v. Deer, 240 F.3d 1287, 1291-92 (10th Cir. 2001) (finding an Eighth Amendment violation where a prisoner was forced to live in a feces-covered cell for three days); LaReau v. MacDougall, 473 F.2d 974, 978 (2d Cir. 1972) (prisoner's Eighth Amendment rights were violated where he was forced to "live, eat, and perhaps sleep in close confines with his own human waste" for five days).

Here, plaintiffs complain of unsanitary conditions combined with exposure to the sun resulting in injuries, as well as the denial of water, and the opportunity to stretch their muscles or otherwise move around. In addition, they repeatedly assert that there was no legitimate penological interest or other reason necessary for defendants to impose the complained-of conditions upon the inmates that day. The indoor gym with working restrooms was available. Other areas of the prison had running water and restroom facilities. The kitchen had access to water, and coolers of water could have been brought outside. Officers could have escorted the prisoners in shifts to working toilet facilities, rather than require them to use a single non-working toilet that was over-flowing with waste by mid-morning, and that was located near where the inmates were forced to sit. Consequently, plaintiffs maintain there was no penological justification to subject them to the complained-of conditions.

Prison officials are not required to adopt the least restrictive policy in regulating inmate conditions and behavior; however, the policy itself must be reasonable. See Talib v. Gilley, 138 F.3d 211, 213-15 (5th Cir. 1998). "No static test exists that measures whether conditions of

confinement are cruel and unusual, for the Eighth Amendment draws its meaning from the 'evolving standards of decency that mark the progress of a maturing society.'" Id. at 214 (quoting Rhodes v. Chapman, 452 U.S. 337, 346 (1981)).

Taking plaintiffs' allegations as true, the conduct of forcing plaintiffs to be subjected to the complained-of conditions with no penological justification sufficiently states an Eighth Amendment violation for purposes of § 1915A. As alleged, Warden Clay orchestrated and ordered the arrangement, and continued to enforce her will despite their complaints and the unhygienic conditions. In addition, Major Castro was present and had the authority to question Warden Clay or to override her decision. Accordingly, both of these defendants will be served to answer the claims against them.

As to the other officers, there is little evidence that these individuals participated in the constitutional violation to any extent except following orders. Captain Hernandez was in charge of the search of the dorms; however, plaintiffs testified that, once the dorms were evacuated, he was not present on the recreation yard but was inside conducting the search. Indeed, he was not seen again until he came to order the offenders back into the dorms. Captain Hernandez was not personally involved in the constitutional violations, and plaintiffs' claims against him are dismissed.

Plaintiffs agreed that Officer Wilson's involvement on that day was limited to holding a chemical dispersment gun aimed at them after certain inmates had yelled at Warden Clay. She had ordered Officer Wilson to perform this duty, and there is no allegation that he used the weapon or threatened any plaintiff. Thus, plaintiffs' claims against Officer Wilson are dismissed.

13

Certain plaintiffs complained about the conduct of Lieutenant Moreno, Officer Smolik, Officer Konchaba-Smolik, and Officer Kiehn, claiming they yelled insults or teased the offenders, while other plaintiffs testified that these individuals were merely doing there jobs and appeared uncomfortable with the entire situation. However, even if these officers were unsympathetic to plaintiffs' conditions, or even rude or verbally abusive, such allegations fail to rise to the level of constitutional violations. See Robertson v. Plano City of Texas, 70 F.3d 21, 24 (5th Cir. 1995) (verbal threats do not rise to the level of a constitutional violation) (citations omitted); Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993) ("Mere allegations of verbal abuse do not present actionable claims under § 1983"). Accordingly, plaintiffs' claims against these defendants are dismissed for failure to state a claim.

F.   **Plaintiffs State A Claim Of Deliberate Indifference To Serious Medical Needs Against Defendant Saenz.**

Plaintiffs allege that Captain Norman Saenz was deliberately indifferent to their serious medical needs when he refused to let them go to the infirmary that evening despite their obvious sunburns and blistered skin, and the next morning, refused to take pictures to document their injuries. They also complain that the John and Jane Doe medical providers treated all the plaintiffs the same and did not provide individualized care.

In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege the official(s) acted with deliberate indifference to serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Wilson v. Seiter, 501 U.S. 294, 303 (1991); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) (per curiam). Deliberate indifference is more than mere negligence. Farmer, 511 U.S. at 835. To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must

both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. Id. at 837.

Furthermore, "negligent medical care does not constitute a valid § 1983 claim." Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); see also Graves v. Hampton, 1 F.3d 315, 319 (5th Cir. 1993) ("It is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim."). As long as jail medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982).

As to Captain Saenz, plaintiffs have alleged sufficient facts for purposes of § 1915A that, if true, state a claim of deliberate indifference to serious medical needs. They testified that they were sunburned on their face and arms; some sustained blisters from the sun-exposure; others complained of headaches and fatigue. Despite the fact that Captain Saenz was aware of the conditions to which the plaintiffs were exposed and was able to observe their physical symptoms firsthand, he summarily rejected their claims and denied them medical attention until the next morning. Thus, plaintiffs have established that Captain Saenz was aware of their medical needs on April 6, 2010, but denied all plaintiffs medical attention until the next morning. Accordingly, plaintiffs' claims that Captain Saenz was deliberately indifferent to their serious medical needs are retained.[4]

As to the John and Jane Doe medical defendants, plaintiffs argue that these individuals were deliberately indifferent because they provided the same treatment to all prisoners, simply

---

[4] When prison officials fail to follow TDCJ rules or regulations, that failure alone does not establish a constitutional violation. Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996) (per curiam); Williams v. Treen, 671 F.2d 892, 900 (5th Cir. 1982). Accordingly, any claims against Defendant Saenz for failure to follow TDCJ Administrative Directive 3.47 are dismissed for failure to state a claim.

15

spraying them with a soothing coolant and advising them to avoid future sun exposure. However, these allegations do not establish that either medical provider was aware of a serious medical need and then ignored that need, as required to state an Eighth Amendment claim. Instead, these allegations amount to no more than a disagreement with the course of treatment provided, and such claims are not actionable. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997). They do not suggest that either medical provider refused to see them or refused to render medical attention. Thus, plaintiffs fail to state a constitutional claim against the Doe defendants, and their claims against these defendants are dismissed.

**G.    Plaintiffs' Retaliation Claims Are Dismissed.**

Plaintiffs claims that, in response to their verbalizing their complaints about having to sit in the sun, Warden Clay and Major Castro then retaliated against the J-3 inmates by placing them on lockdown for the night such that they could not take a shower, participate in recreation, or watch television in the dayroom.

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing McDonald v. Stewart, 132 F.3d 225, 231 (5th Cir. 1998)). An inmate must allege more than his personal belief that he is the victim of retaliation. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). "Mere conclusionary allegations of retaliation will not withstand a summary judgment challenge." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) (citation omitted). The Fifth Circuit has further explained that an "inmate must produce direct evidence of motivation or, the more

16

probable scenario, 'allege a chronology of events from which retaliation may be plausibly inferred.'" Id. (citation omitted).

The Fifth Circuit has explained that "[t]he purpose of allowing inmate retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights." Morris v. Powell, 449 F.3d 682, 686 (5th Cir. 2006) (citing Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1998)). However, some acts, even though they may be "motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights." Id. "Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim." Id. For example, a job transfer from the commissary to the kitchen might be *de minimis*, while a transfer to a more dangerous unit might constitute an adverse retaliatory act. Id. at 687.

Thus, to prevail on their retaliation claim against defendants, plaintiffs must establish that: (1) defendants had retaliatory intent based on plaintiffs exercising their First Amendment right of speaking out against the conditions to which they were subjected that day; (2) the retaliatory act was more than inconsequential or de minimis, and was capable of deterring a person of ordinary firmness from further exercising his constitutional rights; and, (3) but for the retaliatory motive, the adverse action would not have occurred. McDonald, 132 F.3d at 231; see also Bibbs v. Early, 541 F.3d 267, 270 (5th Cir. 2008) (retaliation is actionable only if the retaliatory act "'is capable of deterring a person of ordinary firmness from further exercising his constitutional rights'") (quoting Morris, 449 F.3d at 686).

Plaintiffs allege that, but for certain inmates complaining about the events of the day, the J-3 inmates would not have been denied recreation and a shower that night. However, they

17

testified that *they* did not complain about the incident that afternoon to Warden Clay, but other inmates did, for which they were all punished. Thereafter, plaintiffs all filed grievances complaining about the April 6, 2010 events. Thus, there is simply no evidence that any plaintiff was retaliated against for exercising his right to file grievances. Moreover, even if the inmates were denied recreation and showers that evening because certain inmates had protested, this incident, even if done with retaliatory intent, is *de minimis* and would not deter the plaintiffs from exercising their constitutional rights. Thus, plaintiffs' retaliation claims are dismissed.

## IV. CONCLUSION

For the reasons stated herein, the Court retains plaintiffs' Eighth Amendment claims for cruel and unusual punishment against Warden Clay and Major Castro as well as the deliberate indifference to serious medical needs claims against Captain Saenz, and service shall be ordered on these individuals. Plaintiff's remaining claims against the remaining defendants are dismissed for failure to state a claim.

ORDERED this 17th day of January 2012.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE