IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| MICHAEL K. POWERS, ET AL., | § | |
| | § | |
| v. | § | C.A. NO. V-11-051 |
| | § | |
| DIANA K. CLAY, ET AL. | § | |

**OPINION DENYING IN PART AND GRANTING
IN PART PLAINTIFFS' MOTION TO RECONSIDER**

This case is a civil rights action filed <u>pro se</u> pursuant to 42 U.S.C. § 1983 by several state prisoners based on allegations of allegations mistreatment by defendants while they were incarcerated at the Stevenson Unit in Cuero, Texas. Pending is a motion to reconsider partial dismissal filed by plaintiffs Michael Powers, Richard Stricklin, II, Philip Critchley, and Ronald Keough. (D.E. 82); <u>see also</u> <u>Powers v. Clay</u>, No. V-11-051, 2012 WL 130405 (S.D. Tex. Jan. 17, 2012) (unpublished). For the reasons discussed below, their motion is denied.

## I. BACKGROUND AND FACTUAL ALLEGATIONS

On September 26, 2011, plaintiffs filed this lawsuit alleging that, on April 6, 2010, defendants were deliberately indifferent to their health and safety when they forced the plaintiffs to sit in the sun for over five hours, without adequate water or restroom facilities, and later, denied them medical attention for the injuries they sustained that day. (D.E. 1). In addition, plaintiffs claim that defendants retaliated against them for vocalizing their complaints about the treatment that day. <u>Id.</u>

In support of the claims, five plaintiffs have filed affidavits concerning the events, (D.E. 6-10), and each plaintiff has filed a supplement to the original complaint offering evidence of exhaustion, as well as other details. (D.E. 11-17). They also sought class certification, (D.E. 2);

however, that motion was denied. See generally Powers v. Clay, No. V-11-051, 2011 WL 6130929 (S.D. Tex. Dec. 8, 2011) (unpublished).

In the original complaint, plaintiffs identified the following Stevenson Unit officials and employees as defendants: (1) Warden Kenneth R. Bright; (2) Assistant Warden Diana K. Clay; (3) Major Evelyn Castro; (4) Captain Norman Saenz; (5) Captain Luis Hernandez; (6) Lieutenant Esmerejildo Moreno; (7) Officer Brian A. Smolik; (8) Officer Kristy Konchaba-Smolik; (9) Officer Mitzi F. Kiehn; (10) Officer Kenneth E. Wilson; (11) John Doe medical provider; and (12) Jane Doe medical provider. In addition, plaintiffs sued (13) Rick Thaler, the TDCJ-CID director, and two regional grievance investigators, (14) J.M. Garcia, and (15) Barbara Trevino.

Each of the six plaintiffs had a separate, individual Spears[1] hearing. The following allegations were made in plaintiffs' original complaint, (D.E. 1), affidavits, supplements to the complaint, or at their hearings:

On April 6, 2010, at approximately 9:00 a.m., correctional officers entered the J-3 building at the Stevenson Unit and ordered the prisoners to exit the building and take nothing with them except "shirt, pants, shoes and i.d.'s." Captain Hernandez was in charge of the evacuation of J-3, and it appeared to the plaintiffs that a drug search was being conducted on dorms G, H, and I using drug sniffing dogs. As the inmates exited the building, officers in D-space searched them and confiscated any materials except the allowed clothing. Plaintiffs believed that Captain Hernandez was in charge of the search of the dorms, and he remained in the J-3 building for most of the day.

After all the inmates had cleared the building, they were escorted to the recreation yard and ordered to sit on the concrete basketball court, back to back, with another inmate. After a

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

2

short time had passed, certain inmates requested to use the restroom. The officers guarding them, including Lieutenant Moreno, Officer Smolik, and Officer Kiehn, told them that the water had been turned off to certain buildings, and indicated that inmates would have to use the single, outdoor latrine available. The water to this toilet was also not on, and shortly thereafter, it was overflowing with human waste. As the morning progressed, inmates requested water or permission to get up and stretch, but the defendant officers refused these requests.

At approximately 12:30 p.m., the inmates were taken to the dining hall where each inmate received one glass of water or tea with lunch. They were then escorted back outside, and again ordered to sit on the concrete court, back-to-back.

In the early afternoon, Warden Clay and Major Castro came to the yard. A few inmates asked Warden Clay for water. She ordered them to stay seated, telling them that they would not receive any water. Some of the inmates began complaining loudly about the heat, lack of water, and lack of restroom facilities. In response, Warden Clay ordered Officer Wilson to guard the inmates with chemical agents. He obtained a chemical-dispersing gun and walked back and forth with the gun at a turn-out area outside of the fence. While guarding them, he did not say anything to the inmates.

Warden Clay and Major Castro continued to stand in the shade by the searchers' desk, drinking water and tea, and laughing at the inmates. Warden Clay would make rude comments to the inmates, but Major Castro remained silent.

At approximately 3:00 to 3:30 p.m., Lieutenant Hernandez came to the recreation yard and ordered I dorm to return to the building. About ten minutes later, he ordered H dorm to return, and fifteen minutes after that, he ordered the G dorm to return.

That evening, the inmates in J-3 Building were locked in their cells and not allowed to go

to the day-room, or to take showers. Many of them requested to go to the infirmary, complaining of sun burn, blisters, headache, and other ailments they attributed to the sun exposure. Captain Saenz refused to let the inmates go to the infirmary that evening, but indicated that those wanting medical treatment would be seen the next morning.

The following morning, several nursing stations were set up within the unit to check prisoners complaining of injuries from the previous day. However, the nurses treated all the inmates the same, simply spraying a sunburn coolant on their skin. Some of the inmates, observing that the treatment was the same for all, called for a senior officer to take pictures of their injuries. Captain Saenz arrived and refused to take pictures, even though TDCJ Administrative Directive 3.47 requires that pictures be taken to document alleged injuries. Instead, he was verbally abusive toward those who made the request.

Numerous inmates, including plaintiffs, filed Step 1 grievances about the incident. Warden Bright responded to each grievance with the following reply:

> It is standard operating procedure during a building search to empty the cells during the search utilizing the recreation yard for offenders due to being a secure area. The west side of the unit (B-Building, J4, J5, J3, J2, J1 and gym) was without water due to a water leak; J-3 Building offenders were not being singled out. The entire Region was racked up on April 6th due to an escape at the Briscoe Unit. No further action warranted.

(D.E. 1, at 11). Certain plaintiffs filed Step 2 appeals. As to plaintiffs Powers, Hunter, Stricklin, and Porter, defendant J.M. Garcia offered the following, identical response:

> Your complaint has been noted and appropriately addressed at step one. Only issues related directly to you will be addressed in this response. There is no evidence you were deprived of water, you were released for chow where you received food and water/tea. At no time were you told you could not have water. Temperatures were in an acceptable range, 71 degrees to 79 degrees. Medical indicated redness to lower arms, face and neck. No further action

4

warranted.

(D.E. 11, Ex. 1; D.E. 12, Ex. 1; D.E. 13, Ex. 1; and D.E. 15, Ex. 1).[2]

## II. DISCUSSION

**A.   Plaintiffs' Motion Is Timely.**

A motion to reconsider is timely "filed no later than 28 days after entry of the judgment." Fed. R. Civ. P. 59(e). The Opinion And Order Dismissing Certain Claims And Retaining Case was issued on January 17, 2012. See generally Powers, 2012 WL 130405. Their motion for reconsideration was dated February 10, 2012 and thus was timely filed.

**B.   Legal Standard For Relief Pursuant To Rule 59.**

Rule 59(e) motions "serve the narrow purpose of allowing a party 'to correct manifest errors of law or fact or to present newly discovered evidence.'" Waltman v. Int'l Paper Co., 875 F.2d 468, 473 (5th Cir. 1989) (citations omitted); accord Kossie v. Crain, 602 F. Supp. 2d 786, 793 (S.D. Tex. 2009) (citation omitted). Rule 59(e) cannot be used to introduce evidence that was available prior to the entry of judgment, nor should it be employed to relitigate old issues, advance new theories, or secure a rehearing on the merits. Templet v. HydroChem Inc., 367 F.3d 473, 478-79 (5th Cir. 2004) (citation omitted); accord Kossie, 602 F. Supp. 2d at 793 (citation omitted). To prevail on a Rule 59(e) motion, the moving party must demonstrate the existence of the need to correct a clear error of law, or present newly discovered evidence. Templet, 367 F.3d at 479; accord Kossie, 602 F. Supp. 2d at 793.

---

[2] Plaintiff Critchley's Step 2 appeal was dismissed with a finding that the "grievable time period had expired." (D.E. 14, Ex. 1). Plaintiff Keough did not submit copies of his grievances because they were confiscated during a shakedown. (D.E. 16, Ex. 1).

**C. Plaintiffs' Motion To Reconsider The Dismissal Of Their Claims Based On Respondeat Superior Is Denied.**

Plaintiffs seek reconsideration of claims dismissed against defendants based on respondeat superior. (D.E. 82, at 7-9). Specifically, they assert that "the culpability of Clay, Major Evelyn Castro, and Captain Norman Saenz in both their personal and official capacities is clear." Id. at 8. They further posit that "[t]he line of liability is not so clearly drawn to Warden Bright, and Assistant Regional Directors Barbara Trevino and J.M. Garcia." Id.

It is well established that "personal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) (1983) (citation omitted); see also Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976) (requiring affirmative link between injury and conduct of defendant). A plaintiff cannot obtain damages or injunctive relief from a policy-maker or supervisor solely on a theory of *respondeat superior*. See Monell v. Department of Social Servs., 436 U.S. 658, 691-95 (1978) (supervisory officials cannot be held vicariously liable under § 1983 for their subordinate's actions); Beattie v. Madison County Sch. Dist., 254 F.3d 595, 600 n.2 (5th Cir. 2001). Supervisory officials may be held liable only if they affirmatively participate in acts that cause the constitutional deprivation or if they implement unconstitutional policies that causally result in plaintiff's injury. Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir. 1987).

Only claims against Director Rick Thaler and Warden Bright were dismissed based on respondeat superior. Powers, 2012 WL 130405, at *5. Plaintiff concede they were not raising any claims against Director Thaler. (D.E. 82, at 8). In their complaint and at their hearings, plaintiffs admitted that Warden Bright was not personally involved in the April 6, 2010 incident, and in fact, many plaintiffs testified that he was not present at the Stevenson Unit that day.

There is no evidence that Warden Bright was personally involved in the denial of plaintiffs' constitutional rights. They do not offer any new evidence about his involvement. Instead, they now seem to argue that he "formulated and propulgated policy or custom that led to a violation of the Plaintiffs' constitutional rights." Id. at 9. However, they provide no evidence to support this assertion or any details about this purported policy.

Plaintiffs' claims against Assistant Regional Directors Trevino and Garcia were not dismissed based on respondeat superior. Instead, their claims against them were dismissed because inmates do not have a constitutional right to have their grievances properly investigated. Powers, 2012 WL 130405, at *5-6. They only presented evidence regarding these two defendants concerning their roles in investigating their grievances. They do not provide any new evidence now.

Plaintiffs' claims against Warden Clay, Major Castro, or Captain Saenz were not dismissed based on respondeat superior. Indeed, their Eighth Amendment claims for cruel and unusual punishment against both Warden Clay and Major Castro were retained. Powers, 2012 WL 130405, at *10. Additionally, their claims against Captain Saenz for deliberate indifference to their serious medical needs were also retained. Id.

Plaintiffs have failed to establish any basis for reconsidering the dismissal of claims based on respondeat superior. Accordingly, their motion to reconsider is denied.

**D.  Plaintiffs' Motion To Reconsider The Dismissal Of Their Claims For Failure To Properly Investigate Grievances Is Denied.**

Plaintiffs object to the dismissal of claims based on the failure to properly investigate grievances. (D.E. 82, at 11-12). They raise a policy argument addressing the problems if prison officials do not properly investigate grievances. Id. at 12. Nonetheless, they concede that the

7

Fifth Circuit has determined such failures are not a constitutional violation. Id. (citing Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005)).

Plaintiffs have failed to establish any basis as a matter of law for reconsidering the dismissal of their claims for failure to properly investigate. Accordingly, their motion to reconsider is denied.

E.     **Plaintiffs' Motion To Reconsider The Dismissal Of Their Claims Against Defendants In Their Official Capacity Is Granted In Part.**

Plaintiffs argue that the dismissal of claims against defendants is their official capacity was in error. First, they argue that the Texas Tort Claims Act has a waiver of sovereign immunity. (D.E. 82, at 2-4). Specifically, they argue that Texas has accepted governmental liability for such claims: "[a] governmental unit in the state is liable for ... personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code § 101.021(2).

In the complaint, Plaintiffs raise claims based on constitutional violations. (D.E. 1). They did not assert raise any claims based on the Texas Tort Claims Act. "A state does not waive Eleventh Amendment immunity in federal courts merely by waving sovereign immunity in its own courts." Sherwinski v. Peterson, 98 F.3d 849, 851-52 (5th Cir. 1996) (citing Welch v. Dep't of Highways & Pub. Transp., 483 U.S. 468, 473-74 (1987)). The Supreme Court has explained that "[a] state's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." Welch, 483 U.S. at 473 (emphases in original) (quoting Pennhurst State Sch. & Hosp v. Halderman, 465 U.S. 89, 99 (1984)). In Walker v. Livingston, 381 F. App'x 477 (5th Cir. 2010) (per curiam) (unpublished), the plaintiffs specifically relied on

8

§ 101.021(2) in arguing that sovereign immunity had been waived. Id. at 479. Here, even if plaintiffs had raised such a claim, the Fifth Circuit has determined "that the Texas Tort Claims Act does not waive Eleventh Amendment immunity in federal court." Id. (citing Sherwinski, 98 F.3d at 851-52).

Plaintiffs also argue that the violation of a constitutional rights "automatically nullifies the State's enjoyment of sovereign immunity." (D.E. 82, at 4). They rely on Ex parte Young, 209 U.S. 123 (1908) for this position. However, "[t]he theory of Young was that an unconstitutional statute is void." Green v. Mansour, 474 U.S. 64, 69 (1985) (citing Young, 209 U.S. 159). Here, plaintiffs do not claim that there is an unconstitutional statute, but instead that defendants' actions violated their constitutional rights.

Finally, plaintiffs seemingly are seeking reconsideration asserting that defendants violated their constitutional rights by following an official policy or custom. (D.E. 82, at 4-7). The Eleventh Amendment bars suits against a state by parties seeking monetary damages. See Kentucky v. Graham, 473 U.S. 159, 169-70 (1985); Clay v. Texas Women's Univ., 728 F.2d 714, 715 (5th Cir. 1984) (citations omitted). Nonetheless, "the Eleventh Amendment permits suits prospective injunctive relief against state officials acting in violation of federal law." Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004) (citation omitted).

To establish liability against a state employee in their official capacity pursuant to § 1983, a plaintiff must demonstrate that an official policy is the "moving force" behind the employee's allegedly unconstitutional act. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001). "To establish liability for a policy or practice, a plaintiff must prove that (1) the local government or official

promulgated a policy; (2) the decision [or policy] displayed 'deliberate indifference' and proved the government's culpability; and (3) the policy decision lead to a particular injury." In re Foust, 310 F.3d 849, 861 (5th Cir. 2002) (citation omitted). An official policy is either a formal statement officially adopted by a municipality or a persistent widespread practice of municipal employees which is common and well established. Id.

In the pending motion, plaintiffs point to Warden Clay as the policy-maker. (D.E. 82, at 7). Moreover, they assert that her policies regularly resulted in the practice of placing inmates in exposed areas without protection or basic necessities during searches. See id. at 5-6. They allege that this custom or policy by Warden Clay resulted in the injuries that they suffered. Construing these allegations liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam), and accepting them as true, Denton v. Hernandez, 504 U.S. 25, 32-33 (1992), plaintiffs have asserted a claim against Warden Clay in her official capacity for injunctive relief. Accordingly, plaintiffs' motion to reconsider the dismissal of their official capacity claims against Warden Clay is granted.

**F.    Plaintiffs' Motion To Reconsider The Dismissal Of Their Retaliation Claims Is Denied.**

Plaintiffs argue that the dismissal of their retaliation claims against Warden Clay and Major Castro was error. (D.E. 82, at 9-11). They acknowledge that to state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing McDonald v. Stewart, 132 F.3d 225, 231 (5th Cir. 1998)). However, they posit that there was no finding that they had "failed to meet these requirements." (D.E. 82, at 9). That assertion is

incorrect.

Every plaintiff testified that they had "not complain[ed] about the incident that afternoon to Warden Clay." Powers, 2012 WL 130405, at *10. Thus, plaintiffs have not pointed to "a specific constitutional right" because they did not complain and at that time had not filed any grievances. Because there is no specific constitutional right, they also do not demonstrate any intent by either Warden Clay and Major Castro to retaliate against any plaintiff for exercising their constitutional rights. Because they failed to establish either a specific constitutional right or retaliatory intent, they also cannot establish causation.

As a result of the lockdown, plaintiffs lost less than a day of recreation, including access to showers. The Fifth Circuit has determined that an inmate who lost a single day of recreation allegedly in retaliation for filing grievances failed to establish anything but a de minimis injury. Ordaz v. Lynaugh, 20 F.3d 1171, 1994 WL 144882, at *3 (5th Cir. Apr. 15, 1994) (unpublished); see also Nelson v. Michalko, 35 F. Supp. 2d 289, 295 (W.D.N.Y. 1999) ("plaintiff's loss of one day's exercise, shower and cell clean-up privileges is de minimis").

Plaintiffs also question the timing of the lockdown: "So, the initiation of a lockdown, the prison unit's most restrictive level of custody, occurred at a time when multiple, severely burned offenders should have, at the very least, had access to the shower area so they could alleviate some of their suffering and wash off the possible accumulation of filth from the exposure to human waste they had endured during the day." (D.E. 82, at 11). Here, any injury from exposure to human waste is speculative. Moreover, any alleged injury from untreated sunburn is not due to the lack of access to showers, but due to plaintiffs' allegations of denial of medical care against Captain Saenz, which has been retained. See Powers, 2012 WL 130405, at *8-9.

11

Accordingly, plaintiffs' motion to reconsider the denial of their retaliation claims against Warden Clay and Major Castro is denied.

### III. CONCLUSION

For the reasons stated herein, the motion to reconsider partial dismissal filed by plaintiffs Michael Powers, Richard Stricklin, II, Philip Critchley, and Ronald Keough, (D.E. 82), is granted in part and denied in part. Plaintiffs' claim against Assistant Warden Diana Clay in her official capacity for injunctive relief based on policies and customs that she implemented will be retained. All other claims for reconsideration are denied.

ORDERED this 17th day of February 2012.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE